IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 1/31/14

SCOTT MILLER, et al. )
 )
 )
 )
 Plaintiffs, )
 v. ) Civil Action No.
 ) 1:12-cv-09126-SAS
CITY OF NEW YORK and THE ) ECF Case
NEW YORK CITY POLICE )
DEPARTMENT )
 )
 Defendants. )
_____)

## AGREED ORDER OF DISMISSAL WITH PREJUDICE

These causes having come before the Court upon the joint request of Plaintiffs and Defendants, the Court having been advised of and considered the Settlement Agreement entered into by and among Plaintiffs and Defendants and, upon the joint application of Plaintiffs and Defendants, by their Attorneys, seeking review and approval by the Court thereof, and the entire record therein, it is hereby ORDERED, ADJUDGED AND DECREED as follows:

1. The court approves and adopts as stated the terms of the Settlement Agreement entered into between the parties to the instant actions, recognizing that there is no admission of liability by Defendants, same being expressly denied, but as it reflects a fair, reasonable, and appropriate compromise deemed in the best interest of the parties thereto, and in accordance with law.

2. Consistent with that Agreement, these actions are hereby dismissed with respect to the Plaintiffs, with prejudice and plaintiffs' claims are resolved up through

the time period of January 11, 2014. The Court will retain jurisdiction over the parties to the Agreement for the purpose of interpretation and compliance with the Agreement and this Agreed Order of Dismissal with Prejudice.

So ORDERED this  31  day of Jan.  , 2014.

SHIRA A. SCHEINDLIN
United States District Judge

Approved for Entry:

_____
Attorney for Plaintiffs

_____
Attorney for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SCOTT MILLER, et al. ) | |
| Plaintiffs, ) | |
| v. ) | Civil Action No. |
| ) | 1:12-cv-09126-SAS |
| CITY OF NEW YORK and THE ) | ECF Case |
| NEW YORK CITY POLICE ) | |
| DEPARTMENT ) | |
| Defendant. ) | |

## SETTLEMENT AGREEMENT

This Settlement Agreement ("Agreement") is made and entered into by and among the Plaintiffs in the above-captioned case, who are identified on Exhibit A attached hereto, and who are all persons who have timely consented to be party Plaintiffs in the above-captioned case, and Defendants the City of New York and the New York City Police Department on behalf of themselves and all other New York City departments, commissions, agencies, related entities, predecessors, successors, trustees, officers, directors and employees, agents, employee benefit plans and the trustees, administrators, and fiduciaries of such plans (hereinafter collectively referred to as "Defendants"), and is based on the following:

### I. RECITALS

1.1   Plaintiffs are 84 individuals employed or formerly employed by the Defendants as canine handlers and related positions in the New York City Police Department ("Eligible Plaintiffs"). On December 14, 2012, and on March 8, 2013, Plaintiffs filed their claims with this Court in the above-referenced case.

1.2     An Eligible Plaintiff is defined as an individual who filed a Consent to Sue form with the District Court in connection with this action and who worked as a police office/canine handler - during the eligibility period for each individual under the FLSA statute of limitations (i.e., three years prior to the date they filed their Consent to Sue form or, if a Plaintiff in the prior lawsuit, Abbate, et al., v. City of New York and The New York City Police Department; January 14, 2012, the eligibility period end date of that lawsuit).

1.3     Plaintiffs have made certain allegations and accusations concerning their employment with the Defendants regarding an asserted failure to pay overtime compensation properly under the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq. (hereinafter referred to as the "Released Claims").

1.3     Plaintiffs and Defendants (hereinafter collectively referred to as the "Parties") participated in negotiations, have agreed to settle the matters in dispute between and among them pursuant to the terms of this Agreement. Specifically, the Parties and their counsel have considered that the interests of all concerned are best served by compromise, settlement and dismissal of the Plaintiffs' claims with prejudice. The Parties have concluded that the terms of this Agreement are fair, reasonable, adequate, and in the Parties' mutual best interests.

1.4     The Parties, through their counsel, hereby seek judicial approval of this Settlement Agreement. In the event the proposed settlement contained in this Agreement does not become effective in accordance with the terms hereof, is not finally approved, is terminated, cancelled or fails to become effective for any reason, this Agreement will no longer have any effect and the parties will revert to their respective positions as of the date and time immediately prior to the execution of this Agreement.

**II.     PAYMENT AND DISTRIBUTION**

2.1     In consideration for the terms, conditions and promises in this Agreement, Defendants shall, in accordance with paragraphs 2.2 and 2.3, pay or will cause to be paid to Eligible Plaintiffs $784,901.40 less any deductions made from an individual Plaintiff's amounts for any liens, judgments or wage garnishments against that particular Plaintiff, with such

deductions to be made from the amounts paid as liquidated damages, to resolve all claims for FLSA damages allegedly accruing for the period three years prior to the date the individual plaintiff filed their Consent to Sue form or, if a Plaintiff in the prior lawsuit, Abbate, et al. v. City of New York and The New York City Police Department, January 14, 2012, through January 11, 2014 ("the Settlement Amount"). The Settlement Amount will be divided and distributed to Eligible Plaintiffs as follows. (1) one check payable to Plaintiffs' counsel for distribution to the plaintiffs constituting liquidated damages in the amount of $384,897.14 less any deductions made from individual plaintiff's amounts for liens, judgments or wage garnishments against those Plaintiffs ("the Liquidated Damages Amount"); and (2) a set of payroll checks and/or stubs for direct deposit payments, regular payroll checks for active (employed) Eligible Plaintiffs, and separate payroll checks for inactive (no longer employed) Eligible Plaintiffs made payable to each Eligible Plaintiff in accordance with the Plaintiffs' counsel's instructions constituting his or her share of the backpay award in the total amount of $400,004.26, less all applicable deductions and withholdings and any wage garnishments against that individual Plaintiff. The Individual amount of backpay and liquidated damages is set forth in Exhibit A affixed to this settlement agreement. These amounts are agreed to among the Parties to compromise, settle and satisfy the Released Claims and liquidated damages related to the Released Claims. The liquidated damages portion of an Eligible Plaintiff's recovery will be subject to deductions for liens or judgments against that particular Eligible Plaintiff. Plaintiffs and their counsel will be solely responsible for the distribution of funds to the plaintiffs with respect to the liquidated damages portion.

  2.2 Within thirty (30) days of the date that the Court enters an Order finally approving this Agreement, the Plaintiffs shall tender, by overnight mail, e-mail attachment or hand-delivery, to Defendants' attorney, the following documents to effectuate payment of the settlement amounts referenced in paragraphs 2.1. (1) a listing of the distribution amounts to each individual Plaintiff along with each Plaintiff's social security number; (2) a copy of this Settlement Agreement and its attachments; (3) in the event any Plaintiff(s) does not execute a release, a confirmation by Plaintiffs' counsel of the Plaintiffs who will not execute releases; and

3

(4) the Court's Order approving the settlement. Defendants shall make best efforts to issue payment within ninety (90) calendar days of the date that the Plaintiffs tender these documents. Defendants shall pay the Settlement Amount by depositing individual backpay amounts, less all applicable deductions and withholdings and any wage garnishments, directly into the bank accounts on record for active Eligible Plaintiffs enrolled in EFT, distributing separate payroll checks directly to active Eligible Plaintiffs not enrolled in EFT, and distributing separate payroll checks for non-active Eligible Plaintiffs to plaintiffs' counsel, the amounts as specified in paragraph 2.1 as backpay and, as explained below, distribute the liquidated damages portion, along with attorneys' fees and costs, to Plaintiffs' Counsel. If Plaintiffs fail to provide the document indicating the distribution amounts for each individual Plaintiff within thirty (30) days of the date that the Court enters an Order finally approving this Agreement, Defendants' time to tender payment will begin ninety (90) days after Defendants' attorney receives the distribution information from Plaintiffs. In the event that a Plaintiff's backpay amount will be reduced as the result of wage garnishment, Defendants' counsel shall provide Plaintiffs' counsel with: (1) the name of the Eligible Plaintiff; and (2) the amount of the garnishment and the reasons for the garnishment at or before the time the payment is made by Defendants. Should Defendants fail to make payments within ninety (90) days of the date of tender of the paperwork described in this paragraph, interest shall accrue on whatever amount that remains unpaid, in accordance with NY CLS CPLR §§ 5003 and 5004 from the date of payment is due until the date that payment is made. Defendants shall not be considered to have failed to make payments within the 90-day time period so long as Defendants have made payments according to the direct deposit or payroll check distribution methods described above within that time period, despite the fact that payments may not have been received.

2.3   Defendants' counsel will forward the attorneys' fees check to Woodley & McGillivary as well as the Liquidated Damages Amount payable to Woodley & McGillivary as Plaintiffs' counsel who will be responsible for distributing to each Eligible Plaintiff listed on Exhibit A his/her respective share of the Liquidated Damages Amount in accordance with the

4

Consent/Retainer Agreement previously executed by each of the Eligible. Defendants will send directly to each active (employed) Eligible Plaintiff a backpay amount separate from the active Eligible Plaintiff's regular payroll direct deposit (for Eligible Plaintiffs enrolled in EFT) or payroll check (for Eligible Plaintiffs not enrolled in EFT). Defendants will endeavor to notify Plaintiffs' counsel, of the date when each active (employed) Eligible Plaintiff will be paid and will do so within a reasonable period of time before payment. Defendants will also notify Plaintiffs' counsel the amount to which each active (employed) Eligible Plaintiff will be paid, including deductions and will endeavor to do so before the date that plaintiffs' are paid. If applicable, Defendants' counsel will also send to Plaintiffs' counsel each non-active (non-employed) Plaintiff's individual backpay checks for distribution to the Plaintiffs along with a corresponding document identifying all deductions and withholdings.

2.4     The Defendant shall pay plaintiffs' attorneys' fees and costs in the amount of $38,577.81. Defendants will provide Plaintiffs' counsel with a check payable to Woodley & McGillivary within 90 calendar days of the date Plaintiffs' counsel provides Defendants' counsel with a completed Substitute W-9 and a release regarding compliance with the attorneys' fees payment requirement.

2.5     Plaintiffs and their counsel will defend, release, and hold Defendants harmless from any and all claims or causes of action arising from the distribution of settlement funds.

2.6     Defendants shall distribute W-2 forms to the Eligible Plaintiffs reflecting the backpay payments made under Paragraph 2.1 in this agreement. Plaintiffs' counsel shall distribute to each Eligible Plaintiff receiving a liquidated damages award a Miscellaneous Income Form 1099 reflecting the amount paid to the Eligible Plaintiff as liquidated damages. Each Eligible Plaintiff agrees that he or she will be responsible for his or her individual tax liability associated with the payments made to him or her under this agreement. Provided Defendants timely and properly prepare and submit the necessary W-2 tax forms, Eligible Plaintiffs agree that they shall indemnify and hold harmless Defendants in the event of any

dispute concerning whether taxes are owed by any Eligible Plaintiff on any part of the settlement.

2.7  All payments to Eligible Plaintiffs shall be deemed to be paid solely in the year in which such payments are actually received by Eligible Plaintiffs. It is expressly understood and agreed that the receipt of such Settlement Payments will not entitle any Eligible Plaintiff to additional compensation or benefits under any bonus, contest, or other compensation or benefit plan or agreement in place during the period covered by the Agreement, nor will it entitle any Eligible Plaintiff to any increased retirement or matching benefits, or deferred compensation benefits. It is also expressly understood and agreed that no pension contributions shall be taken from the backpay payments. It is the intent of this Agreement that the settlement payments provided for in this Agreement are the sole payments to be made to the Eligible Plaintiffs, and that the Eligible Plaintiffs are not entitled to any new or additional compensation or benefits as a result of having received payment pursuant to this Agreement (notwithstanding any contrary language or agreement in any benefit or compensation plan document that might have been in effect during the time period beginning three (3) years prior to the filing date of each Eligible Plaintiff's Consent to Sue form, or if a Plaintiff in the prior lawsuit, Abbate, et al. v. City of New York and The New York City Police Department, January 14, 2012 through the date settlement is fully executed). Plaintiffs specifically waive entitlement to such benefits and in additional consideration for the mutual covenants made in this Agreement, hereby agree not to bring any further action against Defendants or any retirement or welfare benefit plan maintained by Defendants or any of its affiliates for additional benefits as a result of any additional compensation paid as a result of this Agreement. This Agreement may be used by the Defendants or by any benefit plan or fiduciary thereof as a complete and absolute defense to any such claim.

### III.  RELEASE AND COVENANT NOT TO SUE

3.1  All Eligible Plaintiffs for themselves, and their spouses and families, attorneys (if any), agents, executors, administrators, personal representatives, heirs, successors, any future

6

estates, assigns and beneficiaries, and any and all of them (collectively, the "Releasers"), voluntarily and with the advice of counsel, fully and forever release, acquit, and discharge the Defendants, their present or former officers, directors, subsidiaries, affiliates, partners, employees, agents, attorneys, accountants, executors, administrators, personal representatives, heirs, successors and assigns, and any or all of them and all persons acting by, through, under, or in concert with any of them (collectively, the "Releasees"), in their personal, individual, official and/or corporate capacities, from their FLSA and /or New York wage and hour claims asserted in the Lawsuit arising up to and including the date of January 11, 2014 for the time period Eligible Plaintiffs worked as nonsupervisory canine handlers for the NYPD. This is the sole claim for which the plaintiffs are releasing defendant as they are the only claims asserted in this action.

    3.2    All Eligible Plaintiffs shall be deemed to and shall have waived, released, discharged and dismissed all released claims as set forth in Paragraph 3.1 above, with full knowledge of any and all rights they may have, and they hereby assume the risk of any mistake in fact in connection with the true facts involved, or with regard to any facts which are now unknown to them.

    3.3    All Eligible Plaintiffs understand and agree that to the fullest extent permitted by law, they are precluded from filing or pursuing any legal claim or action of any kind against any entity at any time in the future, or with any federal, state or municipal court, tribunal or other authority arising out of the Released Claims for the time period beginning three (3) years prior to the filing date of each Eligible Plaintiff's Consent to Sue form, or if a Plaintiff in the prior lawsuit, Abbate, et al. v. City of New York and The New York City Police Department, January 14, 2012, through the date January 11, 2014. They agree not to file or pursue any such claim or action for the Released Claims. Excluded from this release and covenant not to sue is any right or claim that cannot be waived by law, including but not limited to the right to file a charge with or participate in an investigation conducted by government agencies. All Eligible Plaintiffs are waiving, however, any right to monetary recovery should any agency pursue any claims on their behalf with respect to the Released Claims for the time period beginning three (3) years prior to

7

the filing date of each Plaintiff's Consent to Sue form, or if a Plaintiff in the prior lawsuit, Abbate, et al. v. City of New York and The New York City Police Department, January 14, 2012, through the date of January 11, 2014. All Eligible Plaintiffs are specifically waiving any right to appeal any portion or decision relating to these Lawsuit related to the Released Claims or this Agreement to the District Court for the Southern District of New York or the United States Court of Appeals for the Second Circuit.

3.4   All Eligible Plaintiffs agree that they are entering into this Agreement knowingly, voluntarily, and with full knowledge of its significance; each Eligible Plaintiff affirms that he/she has not been coerced, threatened, or intimidated into agreeing to the terms of this Agreement, and he/she has been advised to consult with an attorney.

## IV.   DISMISSAL OF CLAIMS

4.1   Eligible Plaintiffs agree to dismissal of all claims asserted in the Lawsuit against Defendants, with prejudice in accordance with the attached Agreed Order of Dismissal with Prejudice.

## V.   NO ADMISSION OF LIABILITY

5.1   Defendants do not admit any allegations made against them in any charges, complaints, grievances or Lawsuit currently pending between the Parties. Nothing contained in this Agreement shall be deemed an admission of liability or of any violation of any applicable law, rule, regulation, order or contract of any kind.

## VI.   RETALIATION

6.1   The Defendants agree not to retaliate against any Plaintiff employed by the Defendants for pursuing claims in this action, providing testimony in this action, or for otherwise participating in this action, in accordance with the policy against retaliation of the City of New York.

## VII.   CONTINUED JURISDICTION

7.1   The U.S. District Court for the Southern District of New York shall have continuing jurisdiction to construe, interpret and enforce the provisions of this Agreement, and to

8

hear and adjudicate any dispute or litigation arising from this Agreement or the issues of law and facts asserted in or related to the instant actions.

### VIII. PARTIES' AUTHORITY

8.1 The signatories hereby represent that they are fully authorized to enter into this Agreement and to bind the parties hereto to the terms and conditions hereof.

8.2 All of the parties acknowledge that they have been represented by competent, experienced counsel throughout all negotiations which preceded the execution of this Agreement, and this Agreement is made with the consent and advice of counsel who have jointly prepared this Agreement.

### IX. MUTUAL FULL COOPERATION

9.1 The parties agree to use their best efforts and to fully cooperate with each other to accomplish the terms of this Agreement, including but not limited to, execution of such documents and to take such other action as may reasonably be necessary to implement and effectuate the terms of this Agreement.

### X. ENFORCEMENT ACTIONS

10.1 In the event that one or more of the parties to this Agreement institutes any legal action, arbitration, or other proceeding against any other party or parties to enforce the provisions of this Agreement, the successful party or parties shall be entitled to recover from the unsuccessful party or parties reasonable attorneys' fees and costs, including expert witness fees incurred in connection with any enforcement actions.

### XI. MODIFICATION

11.1 This Agreement and its attachment may not be changed, altered, or modified, except in writing and signed by the parties hereto, and approved by the Court.

### XII. ENTIRE AGREEMENT

12.1 This Agreement and its attachment constitute the entire agreement between the parties concerning the subject matter hereof. No extrinsic oral or written representations or terms shall modify, vary or contradict the terms of this Agreement. In the event of any conflict

9

between this Agreement and any other settlement-related document, the parties intend that this Agreement shall be controlling.

## XIII. CHOICE OF LAW/JURISDICTION

13.1 This Agreement shall be subject to, governed by, construed, enforced, and administered in accordance with the laws of the State of New York, both in its procedural and substantive aspects, and shall be subject to the continuing jurisdiction of the United States District Court for the Southern District of New York. This Agreement shall be construed as a whole according to its fair meaning and intent, and not strictly for or against any party, regardless of who drafted or who was principally responsible for drafting this Agreement or any specific term or condition thereof.

## XIV. VOIDING THE AGREEMENT

14.1 In the event this Agreement, or any amended version agreed upon by the parties does not obtain judicial approval for any reason, this Agreement shall be null and void in its entirety, unless expressly agreed in writing by all parties.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

IN WITNESS WHEREOF, the undersigned have duly executed this Agreement as of the date indicated below.

WOODLEY & McGILLIVARY
   1101 Vermont Street N.W., Suite 1000
   Washington, D.C. 20005
   (202) 833-8855

By _____
   Gregory K. McGillivary (SSN 0280)
   Sara L. Faulman (SF 9778)
   T. Reid Coploff (SSN 7882)

Dated: January 27, 2014

ATTORNEYS FOR PLAINTIFFS

CORPORATION COUNSEL OF
CITY OF NEW YORK
100 Church Street, Rm. 2-115
New York, New York 10007
(212) 356-2407

By: _____
   Yuval Rubinstein
   Assistant Corporation Counsel

Dated: January 27, 2014

ATTORNEY FOR DEFENDANT

11

EXHIBIT A

|  | First Name | Last Name | BACKPAY | LIQUIDATED DAMAGES | TOTAL BACKPAY AND LIQUIDATED DAMAGES |
|---|---|---|---|---|---|
| 1 | Brian | Adamson | $ 1,683.02 | $ 1,619.46 | $ 3,302.48 |
| 2 | Douglas | Anderson | $ 2,053.36 | $ 1,975.81 | $ 4,029.17 |
| 3 | Peter | Bagnasco | $ 757.87 | $ 729.25 | $ 1,487.12 |
| 4 | Kevin | Belavsky | $ 1,572.82 | $ 1,513.42 | $ 3,086.24 |
| 5 | Michael | Bobal | $ 3,002.53 | $ 2,889.13 | $ 5,891.66 |
| 6 | Michael | Boehm | $ 10,885.65 | $ 10,474.53 | $ 21,360.18 |
| 7 | Christopher | Bonomo | $ 1,562.68 | $ 1,503.66 | $ 3,066.34 |
| 8 | Lorraine | Bowden | $ 704.51 | $ 677.90 | $ 1,382.41 |
| 9 | Eric | Brzostek | $ 860.12 | $ 827.64 | $ 1,687.76 |
| 10 | Pavel | Byalik | $ 9,723.49 | $ 9,356.26 | $ 19,079.75 |
| 11 | Michael | Cardona | $ 5,347.93 | $ 5,145.95 | $ 10,493.88 |
| 12 | Raymond | Clair | $ 2,828.55 | $ 2,721.72 | $ 5,550.27 |
| 13 | Benjamin | Colecchia | $ 6,145.17 | $ 5,913.08 | $ 12,058.25 |
| 14 | Anthony | Compitello | $ 3,069.43 | $ 2,953.51 | $ 6,022.94 |
| 15 | Walter | Connolly | $ 3,495.56 | $ 3,363.54 | $ 6,859.10 |
| 16 | James | Costanzo | $ 3,258.89 | $ 3,135.81 | $ 6,394.70 |
| 17 | Charles | Cummo | $ 4,067.48 | $ 3,913.86 | $ 7,981.34 |
| 18 | Kenneth | Dean | $ 7,550.78 | $ 7,265.61 | $ 14,816.39 |
| 19 | Miguel | Dedios | $ 7,717.35 | $ 7,425.89 | $ 15,143.24 |
| 20 | Martin | Dennehy | $ 6,696.44 | $ 6,443.53 | $ 13,139.97 |
| 21 | Pedro | Diaz | $ 2,499.66 | $ 2,405.25 | $ 4,904.91 |
| 22 | Robert | Dolan | $ 248.36 | $ 238.98 | $ 487.34 |
| 23 | Frank | Donalds | $ 2,125.70 | $ 2,045.42 | $ 4,171.12 |
| 24 | Terryl | Elder | $ 8,704.69 | $ 8,375.94 | $ 17,080.63 |
| 25 | Thomas | Erickson | $ 3,332.50 | $ 3,206.64 | $ 6,539.14 |
| 26 | Vincent | Ewart Jr | $ 4,268.52 | $ 4,107.31 | $ 8,375.83 |
| 27 | Antoine | Faison | $ 10,165.51 | $ 9,781.58 | $ 19,947.09 |
| 28 | Charles | Fico | $ 18,798.44 | $ 18,088.46 | $ 36,886.90 |
| 29 | Michael | Figueroa | $ 4,733.78 | $ 4,555.00 | $ 9,288.78 |
| 30 | Richard | Geraci | $ 8,872.52 | $ 8,537.43 | $ 17,409.95 |
| 31 | Joseph | Giordano | $ 2,092.97 | $ 2,013.92 | $ 4,106.89 |
| 32 | Michael | Girdusky | $ 7,890.06 | $ 7,592.07 | $ 15,482.13 |
| 33 | Paul | Gitlin | $ 4,482.83 | $ 4,313.53 | $ 8,796.36 |
| 34 | Dennis | Grimm | $ 6,533.54 | $ 6,286.79 | $ 12,820.33 |
| 35 | William Patrick | Haviland Jr | $ 7,686.51 | $ 7,396.21 | $ 15,082.72 |
| 36 | William | Hernandez | $ 8,207.82 | $ 7,897.83 | $ 16,105.65 |
| 37 | Scott | Hummel | $ 653.99 | $ 629.29 | $ 1,283.28 |
| 38 | Anthony | Jacobs | $ 1,393.62 | $ 1,340.99 | $ 2,734.61 |
| 39 | Michael | Jacobs | $ 1,679.22 | $ 1,615.80 | $ 3,295.02 |
| 40 | Gregory | Jawulski | $ 14,312.77 | $ 13,772.21 | $ 28,084.98 |
| 41 | Robert | Jubraj | $ 1,623.23 | $ 1,561.92 | $ 3,185.15 |
| 42 | Daniel | Keane | $ 11,186.64 | $ 10,764.15 | $ 21,950.79 |
| 43 | Steven | Lanoce | $ 5,032.22 | $ 4,842.17 | $ 9,874.39 |
| 44 | Patrick | Lascala | $ 6,811.28 | $ 6,554.04 | $ 13,365.32 |
| 45 | Phillip | LoBello | $ 3,404.10 | $ 3,275.54 | $ 6,679.64 |
| 46 | David | Machin | $ 3,891.91 | $ 3,744.92 | $ 7,636.83 |
| 47 | Horacio | Maldonado, III | $ 4,596.70 | $ 4,423.09 | $ 9,019.79 |
| 48 | Scott | Mateyaschuk | $ 2,723.01 | $ 2,620.17 | $ 5,343.18 |
| 49 | Christopher | Matz | $ 4,418.23 | $ 4,251.36 | $ 8,669.59 |

EXHIBIT A

|  | First Name | Last Name | BACKPAY | LIQUIDATED DAMAGES | TOTAL BACKPAY AND LIQUIDATED DAMAGES |
|---|---|---|---|---|---|
| 50 | Robert | McArdle | $ 2,797.48 | $ 2,691.83 | $ 5,489.31 |
| 51 | Mark | McCallan | $ 856.26 | $ 823.92 | $ 1,680.18 |
| 52 | John | McCormick | $ 14,296.62 | $ 13,756.67 | $ 28,053.29 |
| 53 | Scott | Miller | $ 1,305.59 | $ 1,256.28 | $ 2,561.87 |
| 54 | Robert | Mirabile | $ 3,613.63 | $ 3,477.15 | $ 7,090.78 |
| 55 | Charles | Murphy | $ 9,301.65 | $ 8,950.35 | $ 18,252.00 |
| 56 | Pedro | Murphy | $ 1,120.14 | $ 1,077.84 | $ 2,197.98 |
| 57 | Patrick | Nee | $ 2,948.52 | $ 2,837.16 | $ 5,785.68 |
| 58 | Jaunez | Nunez | $ 14,231.98 | $ 13,694.47 | $ 27,926.45 |
| 59 | Persio | Nunez | $ 3,865.99 | $ 3,719.98 | $ 7,585.97 |
| 60 | John | O'Connor | $ 6,901.66 | $ 6,641.00 | $ 13,542.66 |
| 61 | Michael | Oldmixon | $ 7,119.61 | $ 6,850.72 | $ 13,970.33 |
| 62 | Gary | Page | $ 7,506.15 | $ 7,222.66 | $ 14,728.81 |
| 63 | Michael | Papa | $ 679.96 | $ 654.28 | $ 1,334.24 |
| 64 | Robert | Papp | $ 1,269.00 | $ 1,221.07 | $ 2,490.07 |
| 65 | William | Perazzo | $ 2,336.42 | $ 2,248.18 | $ 4,584.60 |
| 66 | Paul | Perricone | $ 4,831.51 | $ 4,649.04 | $ 9,480.55 |
| 67 | Matthew | Poletto | $ 6,581.98 | $ 6,333.40 | $ 12,915.38 |
| 68 | William | Popper | $ 1,906.66 | $ 1,834.65 | $ 3,741.31 |
| 69 | Edwin | Ramirez, III | $ 3,750.19 | $ 3,608.55 | $ 7,358.74 |
| 70 | Pedro | Reyes | $ 1,563.48 | $ 1,504.43 | $ 3,067.91 |
| 71 | Kyle | Rice | $ 6,348.83 | $ 6,109.05 | $ 12,457.88 |
| 72 | Paulino | Rosario, Jr. | $ 1,783.05 | $ 1,715.71 | $ 3,498.76 |
| 73 | Wayne | Rothschild | $ 2,598.91 | $ 2,500.76 | $ 5,099.67 |
| 74 | Scott | Ryan | $ 4,097.65 | $ 3,942.89 | $ 8,040.54 |
| 75 | Andreas | Savva | $ 8,610.17 | $ 8,284.99 | $ 16,895.16 |
| 76 | Stephen | Schwartz | $ 481.45 | $ 463.27 | $ 944.72 |
| 77 | Ronald | Spalazzi, Jr. | $ 7,317.27 | $ 7,040.92 | $ 14,358.19 |
| 78 | Scott | Spector | $ 7,849.97 | $ 7,553.50 | $ 15,403.47 |
| 79 | Sean | Stone | $ 2,633.61 | $ 2,534.15 | $ 5,167.76 |
| 80 | Christopher | Theofield | $ 134.78 | $ 129.69 | $ 264.47 |
| 81 | Vincent | Tieniber, Jr. | $ 1,250.10 | $ 1,202.89 | $ 2,452.99 |
| 82 | Joseph | Trancho | $ 5,151.09 | $ 4,956.55 | $ 10,107.64 |
| 83 | Stephen | Wicelinski | $ 5,012.88 | $ 4,823.56 | $ 9,836.44 |
| 84 | Paul | Zito | $ 2,596.06 | $ 2,498.01 | $ 5,094.07 |
|  |  |  | $ 400,004.26 | $ 384,897.14 | $ 784,901.40 |